Good morning, Your Honors. Thomas Ogden on behalf of Respondent Song Xinbin. I'd like to reserve my time, but I'd like to just really make one point. I think I've laid out most of my arguments in the brief, actually, and my substantive arguments, too. But as I was the first full paragraph, but the second half of the page, I'm just going to read it very quickly. They cite to Gong V. Holder, and they make the argument that while this court granted a petition for review on potentially similar facts, Gong V. Holder unpublished, that decision does not assist Mr. Song's claim that he was persecuted on account of a protected anti-government political opinion. In Gong, the court not only considered the basis for whether the record contained reasons other than the imputed political opinion for the police beating, and held that it did not. I took a look at the Gong case, and last night it struck me that it was my own case. So as I was going through it, when you read the opinion, I didn't make the connection because it was cited in the federal appendix, but I had the unpublished opinion. So as I was literally reading my own brief, I noticed the misspelling of Gong. So my brief, it's the same fact pattern. I actually used my points from Gong in this brief, and I thought I misspelled Song and Gong until I realized this was my case. And what is not present in that opinion is the fact that it was the same identical argument at the BIA where, and I'm just going to take the liberty, this is the BIA opinion. Right. Well, I mean, that case isn't binding on us because it's a non-presidential case, and although it has persuasive ability. So tell me why you, the key in this case is whether or not there's sufficient nexus to the persecution on account of political grounds. So why don't you tell us why you think the record supports your contention that there was, in fact, sufficient nexus? Absolutely, Your Honor. It's, you can take any eminent domain case like they did in Gong, and I know it's not binding. That's why when I first looked at it, it wasn't focused. And you can look at it as when you're protesting the Chinese government, you're never going to say, I'm protesting the Chinese government. So the BIA comes in, and when they get those fact patterns, they say, the BIA will then kind of whipsaw and say, you weren't protesting eminent domain. You're just protesting your compensation. And that's basically the rationale here for why this case, the BIA said there's no nexus to an imputed political opinion. And that was my situation in Gong, and they said, when they looked at the record, they just ignored that because the previous panel on Gong, because you can characterize that about any eminent domain case, saying, oh, you're just mad about the compensation. But that's inherently political, because when you're talking eminent domain, it's one of our fundamental rights in the Constitution, because it's a government coming in and saying, I'm going to favor these developers or whoever, and I'm going to take your property. That's I don't know how you can then go in there and get nitpicky and say, well, you're just mad about the compensation. So even if he would have been expressing a political opinion, even if he didn't organize the people and have the march on the office, the mere asking for more money and saying that I'm entitled to it under theories of eminent domain, that would have been a political opinion? I believe any time you're questioning the government on the just compensation, you're a political statement. So you don't rely on his activity of organizing the group or putting banners out of his house  Of course, Your Honor. Yes, that is. But fundamentally, when they broke it down, they're trying to say he's just mad about the compensation. He wanted more money. This was a civil matter. Okay. Well, maybe. But in the U.S., we get a civil matter, we get to go to court. In China, I'd say to the country conditions report, what's your remedy? I'm going to strap myself to my house. I'm going to set myself on fire. So his actions and what he testified to, credibly, I might add, is entirely consistent with the Department of State report that says this is what goes on in China. You don't get your day in court. You go out, you protest. And during his testimony, he said when the government officials came down to confront him during the protest, they asked, are you protesting the government? And he testified truthfully. I said, no. But I don't think anybody in China would ever voluntarily admit that they're protesting the government when confronted by government officials and law enforcement. Thank you, Counsel. Thank you, Your Honor. I'll reserve the rest of it if I could. Good morning. May it please the Court. Lisa Damiano on behalf of Respondent. Good morning. As Your Honors are aware, this involves one issue, and that's whether substantial evidence supports the agency's determination that Mr. Song was not harmed on account of any imputed political opinion, where he merely rejected the, what he perceived as an inadequate compensation offer. But is that all he did? Doesn't the record have a lot more evidence of organizing activities and protests? I mean, over 100 people showed up and blocked the entrance to a government building. That seems like a pretty big deal. It is a very big deal. And what we have argued is that he did so, and the 100 people that accompanied him did so because they were angry that they didn't receive enough money for their property and that they went there to negotiate. Now, we get that from Petitioner's testimony. Petitioner testified that this was a monetary dispute. He testified at all times that he spoke with Is the government's position that protests stemming out of eminent domain disputes can never be imputed political opinion? Absolutely not, Your Honor. It could be under the right fact pattern. But here, we're not What sort of fact patterns would give rise to imputed political opinion in an eminent domain dispute between individuals and government officials that aren't present in this case? Well, I can't say, Your Honor. I mean, I only have this case and these facts and these events in front of me. And it's not Respondent's burden to show that it wasn't an imputed political opinion. It's Petitioner's burden to show that the evidence in this record compels the contrary result and that the imputed political opinion was one central reason for the harm. Now, here we have a legitimate prosecutorial interest. We have Petitioner admitting before the immigration judge that he directed a hundred people to block the entrance to a government building. He also admitted to the judge that he didn't have a permit for the demonstration and that such activity in China is against the law. So if you were protesting, for example, the China's population policy under the same fact pattern, you would concede that there was a nexus, right? Well, I would have to. I'd have to see the record. But he, you said... No, I'm talking, basically, you seem to be, if I understand your argument correctly, you seem to be saying two things. One, that if it's a non, if China considers it an unlawful protest, then it's not a nexus. They have a right to prosecute. Or two, that if it's economically based, then it can't be politically based. It can be politically based if it's economic. But in this case, he wasn't protesting a policy like the population control policy. Let me interrupt you for a second. So when the testimony was that the government officials said this is an anti-government protest, why doesn't that indicate it's an imputed anti-government political opinion? Because as Elias Zacharias, in Elias Zacharias' case, the Supreme Court said that it can't be just a generalized political motivation. There has to be an imputed, an opinion that was imputed to him. Anything you do that's against the law can be considered anti-government. But here, the government had a legitimate claim that he was breaking the law. What do you make of the Human Rights Report, which indicates that property disputes, exactly in this context, often turn violent because of collusion between developers and government officials, underpaying homeowners, property owners. And so that's, hence, these sort of protests. It seems to fall squarely within that situation. Yes. The evidence that a country suffers from a particular problem, like corruption in the eminent domain sphere, is not evidence that this particular petitioner held a political opinion or that the individuals who detained and arrested him believed he had a political opinion. Now, you have to remember that when he was arrested, it was the day before the demolition was scheduled. He had hung a banner that said he's opposed to the demolition and that he's going to die with his property. Police officers showed up. They didn't say anything to him about his opinions, his demonstration, the meeting with the mayor. They said, let's take a walk. And then the petitioner refused to go with them, and a struggle ensued. He resisted arrest, and they arrested him. And they let him go after the demolition occurred. So the point is, they're... Except that he testifies that they encouraged the beating, and the IJ accepted his testimony as credible. That's true, Your Honor. But here, the agency found, and the evidence does not compel contrary, that the motives of the authorities in this case were because they were upset that he had interfered with their function, interfered with them demolishing the shopping center building. Their motivation was to proceed with eminent domain. The city wanted the building, the commercial unit, and petitioners stood in the way of that. So they arrested him after he refused to leave the property, after he resisted their directive to come walk with them. And while petitioner now says it was an anti-corruption or a political opinion, he never expressed any of that before the immigration judge. He never... Does he have to use the words corruption to express a political opinion? Absolutely not. It's just that he had later put in his brief to the board, and before the court, he mentions corruption, but that he... But he was accused while he was in custody of being anti-government, right? Yes, he was accused of being anti-government, but that in and of itself, like I said, anyone that breaks the law could be considered doing something anti-government. He was interfering with a public function, and their statement that he's anti-government could have been, well, you stood in the way of us getting this building to demolish it, or you stood in the way... I don't think I understand your answer in the context of the other issues we've had from China, because, of course, China for a long time had the one-child policy that was the law. We granted relief in many of those cases, but under your theory, we shouldn't have because that was just an unlawful activity that China wasn't forcing. No, but, Your Honor, in that case, the individuals who are resisting were resisting a governmental policy. Here, we... Well, here's a governmental policy that they're not going to compensate people fairly in accordance with the law. We don't know that, Your Honor. We know... That's the allegation that he has, and he testified credibly. Yes, that's the allegation, but we don't know that they were really violating the law. He has a document that says this is what he's supposed to be paid per square foot. We also have an official that said that they did surveys on the property. We'll get back to you. They never got back to him. The point is that we don't know why they offered to give him that lesser amount. Well, I think the Human Rights Report bolsters his claim, so you're reading it divorced from what's happening in China. Well, the Human Rights Report, again, speaks of a problem with eminent domain cases and corruption, but we have to show, or Petitioner has to show, the evidence compels a finding that he was... Sorry, I was looking at the time. No, go ahead. ...compels the finding that he was expressing a political opinion or they imputed one to him, and they have to show that it was one central reason, so that means but for the imputed political opinion, the harm would not have occurred. Here we have a person who admitted to breaking the law and admitted to not leaving the property when the officers asked him to take a walk, so he'd have to show that but for the imputed political opinion, this wouldn't have happened, and he's admitted to breaking the law. He's admitted to not leaving the property and saying that he was going to die with the building, so he has to show that the evidence compels. So I agree the report does talk of eminent domain corruption, but he has to show it was his burden to show that there was an imputed political opinion, and now he has to show that the evidence compels that result, and that that was one central reason for the harm. Does it have to be the only reason? No, it does not have to be the only reason, but the case law says that he has to demonstrate that but for that protected ground, he wouldn't have been harmed in order for it to be one central reason. I just wanted to speak to a couple of points. Counsel mentioned the same identical argument in the Gong case, but of course it's not the same identical record. There in Gong you had an individual who had attempted to report malfeasance to a higher level government official. That's in the Gong case, and you had an individual that was assaulted by a group of assailants after he attempted to report. Here you never had any of that. He never accused anyone. You had someone who was beat up in prison and other prisoners told to attack him. After he was arrested for a crime, refusing to, interfering with public function, and after he refused to go with the officers. Now I'm not saying it's, I'm not saying that they should have encouraged prisoners to hit him, beat him, that they shouldn't have mistreated him. What I'm saying is that was in the context of an arrest that could be seen as legitimate. And that's, and we're, you know, our argument is that the record doesn't compel the finding that but for an imputed political opinion, this wouldn't have happened to him. Thank you, Counsel. Thank you. Will you rebuttal? Your Honors, I'm just going to be 30 seconds. I'm going to file a FRAP 28J just to point out we're in the human rights record because I've read that thing probably 300 times. But it talks about how, yes, on the books the Chinese do have the right to lawful assembly, but in practice they seldom grant permits. And I may, I don't want to, I was bragging to my friend over here how I got my whole administrator record on my iPhone so I can't see it right now. I'll just do it on FRAP 28J. That's fine. Thank you very much. Thank you, Your Honor. Petitioner rests. The case just heard will be submitted for decision. Thank you both for your arguments.
judges: Thomas, Nguyen, Amon